# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# MIDDLE DIVISION

| | | |
|---|---|---|
| **JERRY JEROME PRIMM,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 3:09-0731 |
| | ) | Judge Trauger |
| **JAMES FORTNER,** | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

### I. INTRODUCTION

The petitioner is a prisoner in the Turney Center Industrial Complex (Turney Center) in Only, Tennessee. He brings this *pro se* action under 28 U.S.C. § 2254 seeking federal *habeas corpus* relief. The petitioner names James Fortner, Warden at Turney Center, as the respondent.

### II. FACTUAL BACKGROUND

Cornelius Primm was at Rodney Campbell's house on June 3, 2002 when his cousin, the petitioner, called. (Add. 1, Vol. 2, p. 51)[1] The petitioner picked up Cornelius and Campbell in his car and picked up Brandon Lake shortly thereafter. (Add. 1, Vol. 2, pp. 51, 55) The petitioner asked Lake to help him find Gary Moment. (Add. 1, Vol. 2, pp. 103-107) The four then drove around looking for Moment, whom the petitioner apparently believed had either broken into his house or knew who did. (Add. 1, Vol. 2, pp. 51-52)

Lake spotted Moment, and the petitioner pulled up next to him. (Add. 1, Vol. 2, pp. 51, 120) Moment was with a friend, Antwain Broome. (Add. 1, Vol. 2, pp. 115-120) The petitioner rolled down the window, spoke briefly with Moment, and told him several times to get in the car. (Add.

---

[1] The addenda referred to herein were filed with Docket Entry No. 16)

1, Vol. 2, pp. 51, 58, 116-117) Moment was reluctant to get in but finally acquiesced. (Add. 1, Vol. 2, pp. 58, 109-110, 121-123) Lake left the group in another car that was passing by. (Add. 1, Vol. 2, pp. 58-59, 110-111, 123)

The petitioner told Cornelius to take the wheel. (Add. 1, Vol. 2, pp. 52, 60) The petitioner got in the back seat with Moment, who took the seat behind the driver, and Campbell moved to the front passenger's seat. (Add. 1, Vol. 2, pp. 59-60) The petitioner drew his Ruger .357 magnum revolver when he got into the back seat, and Campbell lay his Lorsen .380 semiautomatic pistol on his lap when he got in the front seat. (Add. 1, Vol. 2, p. 63-64, 67, 78) The four drove a short distance, and after the petitioner and Moment "began arguing back and forth," they turned around and drove to an address on Creighton Avenue. This was apparently where Moment told the petitioner the person lived who had robbed his house.[2] (Add. 1, Vol. 2, pp. 52, 61-62)

When they pulled up in front of the house on Creighton Avenue, the petitioner struck Moment on the head with his revolver, causing his head to bleed. (Add. 1, Vol. 2, pp. 52, 62, 65-66) As the petitioner got out of the car, he instructed Campbell to "shoot . . . or kill . . ." Moment if he touched the car door, or tried to get away. (Add. 1, Vol. 2, pp. 52, 66-67, 97) The petitioner then walked up the driveway toward the house. (Add. 1, Vol. 2, pp. 52, 67)

---

[2] There is some confusion in the record about where Moment actually was driven. In its opinion on direct appeal, the Tennessee Court of Criminal Appeals (the Court of Criminal Appeals) writes that "they drove to the victim's house." (Add. 2, Vol. 3, p. 2) The testimony at trial is not clear, because Cornelius– the only witness on this point – repeatedly uses the pronouns "his" and "he" to describe to whose house they went. (Add, Vol. 2, pp. 52, 61-62) On the other hand, the lead detective in the case, Detective James Fuqua, testified at the bond hearing that the petitioner was looking for someone named "Travis" who had robbed his house, and that it was "Travis" who supposedly lived at the house on Creighton Avenue. (Add. 1, Vol. 2, pp. 5-6, 8, 10) Campbell's testimony at his own trial, read to the jury at the petitioner's trial as discussed *infra* at p. 9 n. 6, also establishes that the house to which they drove belonged to someone other than Moment. (Add. 1, Vol. 6, pp. 378-379) Finally, the address listed in Moment's Autopsy Report is not the address to which he was driven.

2

Approximately a "minute" after the petitioner had gotten out of the car, Moment reached between the front seats, in an unsuccessful bid to grab Campbell's .380 Lorsen, and opened the back car door at the same time. (Add. 1, Vol. 2, pp. 52, 68-69) As Moment tried to flee, Campbell began shooting when Moment was within "one foot" from the car, and the petitioner began firing at Moment immediately thereafter. (Add. 1, Vol. 2, pp. 52-53, 68-70, 73, 85-91, 93, 95-98) Both men fired several shots. (Add. 1, Vol. 2, pp. 69-70, 73) The petitioner got back in the car after Moment ran between two houses, and he, Cornelius, and Campbell drove away. (Add. 1, Vol. 2, pp. 53, 70)

The victim's sister, Lisa Moment, began to look for her brother when his boss notified her mother that he had not shown up for work. (Add. 1, Vol. 2, p. 133) She found the body of her brother (hereinafter "the victim") behind some houses several days later and telephoned the police. (Add. 1, Vol. 2, pp. 134-136) During the course of their initial on-scene investigation, the police recovered a single, recently fired .380 caliber brass casing on the shoulder of the road in front of the house behind which the victim's body had been found. (Add. 1, Vol. 3, pp. 178-187)

Both Broome and Lake later identified the petitioner as the person who had been driving the car when the victim got in. (Add. 1, Vol. 2, pp. 124-125, Vol. 3, pp. 205-206) The petitioner subsequently was arrested at his girlfriend's house, and his .357 magnum was seized. (Add. 1, Vol. 3, pp. 207-210, 241-245) Campbell also was taken into custody, and his .380 Lorsen was seized as well. (Add. 1, Vol. 3, pp. 224-225, 276-277, 281-286) The police also seized the petitioner's car, in which several blood stains were found. (Add. 1, Vol. 3, p. 225-228, 251-253) It was later determined that the blood was the victim's. (Add. 1, Vol. 3, pp. 226-228, 251-253)

The petitioner gave a voluntary statement to the police, admitting that he fired his .357 magnum as the victim fled. (Add. 3, Vol. 7, Ex. 16-B) Although the petitioner claimed that he fired

3

only once into the air, Cornelius testified that the petitioner fired six times <u>at</u> the victim – not over his head. (Add. 1, Vol. 2, p. 70; Vol. 7, Ex. 16-B, pp. 16-17, 20, 26)

The autopsy revealed that the victim had been shot five times: three times in the back, once in the right buttock, and once in the front of his left thigh. (Add. 1, Vol. 7, Ex. 27-A) The only bullets recovered from the victim's body were from the buttock and left thigh wounds. (Add. 1, Vol. 3, pp. 201; Vol. 5, pp. 342-343) The two bullets that were recovered had been fired by Campbell's .380 Lorsen.[3] (Add. 1, Vol. 3, p. 302) The brass casing found on the road in front of the house where the victim's body was discovered also had been fired by Campbell's .380 Lorsen. (Add. 1, Vol. 3, p. 308) The bullets from the other three wounds were not recovered.[4]

Evidence was adduced at trial that .357 magnum bullets hit with greater force, penetrate much deeper, and cause more damage than .380 caliber bullets such as those that were recovered from the victim's body. (Add. 1, Vol. 3, pp. 314-315) Evidence also was adduced at trial that more powerful bullets, such as a .357 magnum bullet, are more likely to go through the human body than less powerful ones, such as a .380 caliber bullet. (Add. 1, Vol. 5, p. 346)

### III. PROCEDURAL BACKGROUND

The Davidson County Grand Jury returned a three-count indictment against the petitioner in the shooting death of the victim: Count One – first-degree murder in violation of Tenn. Code Ann.

---

[3] One of two .380 caliber bullets entered the victim's right buttock, passed through the skin, soft tissue, skeletal muscle, perforated the small intestine and mesentery, and lodged in the subcutaneous tissue of the left upper abdomen. The second .380 caliber bullet entered in the right upper thigh, passed through skin, soft tissue, and lodged in deep skeletal muscle without hitting the leg bone. (Add. 1, Vol. 5. pp. 342-343 ; Add. 7, Ex. 27-A, ¶¶ 4-5, pp. 3/6 & 4/6)

[4] The fatal wound which struck the aorta entered the right upper back, passed through the skin, the skeletal muscle, fractured the posterior right side, second rib, perforated the right upper lobe of the lung, lacerated the superior portion of the aortic arch, perforated through the anterior second and third rib space, on the left chest, and exited through the soft tissue and the skin. That bullet was not recovered. (Add. 1, Vol. 5, p. 339; Vol. 7, Ex. 27-A, ¶ 2, p. 3/6).

4

§ 39-13-202; Count Two – especially aggravated kidnapping in violation of Tenn. Code Ann. § 39-13-305; Count Three – felony murder in violation of Tenn. Code Ann. § 39-13-202. (Add. 1, Vol. 1, pp. 0008-0011) The petitioner was tried before a jury on July 19 and 20, 2004. (Add. 1, Vol. 2, pp. 46-143; Vol. 3, Vol. 5) The jury found the petitioner guilty of second-degree murder on Count One and guilty as charged on Counts Two and Three.[5] (Add. 1, Vol. 5, pp. 414-415)

The petitioner's conviction for second-degree murder was merged with his conviction for first-degree felony murder, and he was sentenced to life. (Add. 1, Vol. 1, pp. 0045-0046; Vol. 5, p. 416) A sentencing hearing was held on August 27, 2004 to consider the petitioner's conviction for especially aggravated kidnapping. (Add. 1, Vol. 4) At the conclusion of the hearing, the petitioner was sentenced to twenty years to run consecutively with his life sentence. (Add. 1, Vol. 1, pp. 0052-0053; Vol. 4, pp. 21-22)

The petitioner was granted permission to late-file an appeal. (Add. 1, Vol. 1, pp. 0062, 0065-0066) The Court of Criminal Appeals affirmed the judgment of the trial court on June 29, 2006, following which the Tennessee Supreme Court denied his Rule 11 application for permission to appeal on August 28, 2006. (Add. 2, Doc. 3-4)

The petitioner filed a *pro se* petition and two amended petitions, through counsel, for post-conviction relief. (Add. 3, Vol. 1, pp. 0014-0031, 0036-0043) A post-conviction evidentiary hearing was held on March 17 and 26, 2008, following which the petitioner's request for post-conviction relief was denied. (Add. 3, Vol. 1, pp. 0046-0056; Vol. 2) The Court of Criminal Appeals affirmed the judgment of the post-conviction court on April 16, 2009, and the Tennessee

---

[5] Campbell was tried separately on the same three counts and was convicted on one count of kidnapping and two counts of second-degree murder. *See State v. Campbell*, No. M2004-02088-CCA-R3-CD, 2005 WL 2205855 (Tenn. Crim. App.).

5

Supreme Court denied his Rule 11 application for permission to appeal on August 24, 2009. (Add. 4, Doc. 3, 5)

The petitioner filed the petition in this action on July 28, 2009. Rule 3(d), Rules – Section 2254 Cases. The petitioner raises the following grounds for relief: 1) the evidence was insufficient to support his convictions for felony murder and especially aggravated kidnapping; 2) the trial court did not sentence the petitioner properly; 3) defense counsel's representation was deficient; 4) and the order in which the jury instructions were presented to the jury was improper. (Docket Entry No. 1, ¶ 12, pp. 6-12) The respondent filed a response to the petition on October 16, 2009, in which he urges the court to deny the petition. (Docket Entry No. 15) The petitioner has not filed a reply.

## IV. ANALYSIS

Title 28 U.S.C. § 2254, as amended by the AEDPA, provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Under the former, "a federal *habeas corpus* court may grant relief if the state court identifies the governing legal principle from [the

6

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The latter clause is satisfied when a state court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or . . . decides a case differently than the Court . . . on a set of materially indistinguishable facts." *Id*. at 364-65. Moreover, where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003).

### A. Whether the Evidence Was Sufficient to Convict The Petitioner of Felony Murder and Especially Aggravated Kidnapping

The petitioner asserts that the evidence was insufficient to convict him of felony murder and especially aggravated kidnapping, because there was no ballistic evidence that showed he shot the victim, and the witnesses for the state – Cornelius and Broome – did not testify that he forced the victim into the car or held the victim captive. (Docket Entry No. 1, ¶ 12, Ground One, p. 6) The respondent argues that the state court's adjudication of this claim did not involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence. (Docket Entry No. 15, pp. 7-10)

The relevant question when considering sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n. 16.

7

Under Tennessee law in effect at the time of the offenses, especially aggravated kidnapping was defined, in relevant part, as "false imprisonment" accomplished "with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon, or . . . [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-305(a)(1), (4)(2002). The offense of "false imprisonment" was defined as occurring when one "knowingly removes or confines another so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a)(2002). Finally, first-degree felony murder was defined as the "killing of another committed in the perpetration or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy . . . ." Tenn. Code Ann. § 39-13-202(a)(2)(2002).

The Court of Criminal Appeals correctly identified *Jackson v. Virginia* as controlling in those instances were sufficiency of the evidence is challenged. (Add. 2, Doc. 3, p. 3) The Court of Criminal Appeals also defined as follows the elements of the two offenses at issue here:

> Especially aggravated kidnapping is defined, in relevant part, as false imprisonment that is accomplished 'with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon, or . . . [w]here the victim suffers serious bodily injury.' False imprisonment is defined as the unlawful and 'knowing[] remov[al] or confine[ment of] another so as to interfere substantially with the other's liberty. First degree felony murder is defined as the 'killing of another committed in the perpetration or attempt to perpetrate any first degree murder, act of terrorism, arson rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or air piracy.

(Add. 2, Doc. 3, p. 3) As shown above, the Court of Criminal Appeals correctly cited the elements of the offenses of especially aggravated kidnapping and first-degree felony murder in effect at the time the victim was murdered.

8

The Court of Criminal Appeals summarized the evidence presented against the petitioner at trial as follows:

> When viewed in the light most favorable to the state, the evidence demonstrates that the defendant persuaded the reluctant victim to enter his vehicle and that once inside the vehicle, the defendant struck the victim's head with his handgun. Thereafter, the defendant instructed Mr. Campbell to shoot the victim if he tried to exit the vehicle, and after the victim exited the vehicle, both Mr. Campbell and the defendant fired their guns at the victim multiple times, resulting in the victim's death.

(Add. 2, Doc. 3, p. 4)(internal citations omitted)  A comparison of the Court of Criminal Appeals' summary of the evidence above squares with the factual background derived from the record, presented *supra* at pp. 1-4.[6]

The court finds that the evidence would have been sufficient for any rational trier of fact to have concluded beyond a reasonable doubt that the petitioner interfered with the victim's liberty by threatening him with a deadly weapon and/or by inflicting serious bodily injury when he struck the victim on the head with his revolver.  The court also finds that the evidence was sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the extreme damage associated with the likely fatal wound, described *supra* at p. 4 n. 4, was caused by one of the several .357 magnum bullets fired by the petitioner at the victim, not one of the .380 caliber bullets fired by Campbell that were stopped by skin, soft tissue, and muscle alone.  Taken together, any rational trier of fact could have concluded beyond a reasonable doubt that the petitioner murdered the victim in the perpetration of the offense of especially aggravated kidnapping.

---

[6] The evidence at the petitioner's trial also included parts of Campbell's testimony at his own trial being read to the jury by defense counsel after Campbell invoked his rights under the Fifth Amendment not to testify at the petitioner's trial. (Add. 1, Vol. 5, pp. 370-402)  The portions of Campbell's testimony read to the jury actually supported the testimony of the state's witnesses in the petitioner's trial.  The record does not include a copy of closing arguments, so it cannot be determined what defense counsel sought to prove by reading Campbell's testimony to the jury.

9

The plaintiff has failed to show that the Court of Criminal Appeals' determination on this issue was contrary to, or an unreasonable application of, clearly established federal precedent. The petitioner also has failed to establish that the Court of Criminal Appeals' decision on this issue was based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim is without merit.

### Certificate of Appealability

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The petitioner has not made a substantial showing of a denial of a constitutional right. Accordingly, a COA will not issue as to this claim.

### B. Whether the Trial Court Sentenced the Petitioner Properly

The petitioner asserts next that the trial court sentenced him improperly, because "there is no evidence to . . . show kidnapping plus [he is] a range 1 offender and there are no enhancement factors." (Docket Entry No. 1, ¶ 12, Ground Two, pp. 7-9) The respondent argues that the petitioner's claim does not constitute "a cognizable basis for relief" and that the petitioner "did not raise this issue as a federal constitutional issue in the Tennessee State courts, but based his argument instead on Tennessee statutory procedure . . . ." (Docket Entry No. 15, pp. 10-11)

The law is well established that it is not within the province of a federal *habeas corpus* court to reexamine state court determinations on questions of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see e.g., Pulley v. Harris*, 465 U.S. 37, 41

10

(1984); *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975)(*per curiam*). More particularly, a claim that the trial court violated state law when sentencing a prisoner is not cognizable in a federal *habeas corpus* proceeding. *See e.g., Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000); *Bloyer v. Peters*, 5 F.3d 1093, 1000 (7th Cir. 1993); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)(*per curiam*); *Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir. 1987).[7] The respondent is entitled to judgment on this issue as a matter of law.[8]

**Certificate of Appealability**

The petitioner has not made a substantial showing of a denial of a constitutional right. Accordingly, for the reasons explained *supra* at p. 10, a COA will not issue as to this claim.

**C. Whether Defense Counsel's Representation was Ineffective**

The petitioner raises three factual predicates in the context of his ineffective assistance claim: 1) defense counsel did not communicate the material aspects of the case to him; 2) defense counsel

---

[7] It does not appear that the Sixth Circuit has held in a published opinion that violations of state law in sentencing are not cognizable in a federal *habeas corpus* proceeding. However, it has so held in numerous unpublished opinions. *See Howard v. White*, 76 Fed.Appx. 52 (6th cir. 2003); *Branan v. Booth. See e.g., Terry v. Trippett*, No. 94-2077, 1995 WestLaw 469424, at *1 (6th Cir. (Mich.)); *Lunsford v. Hofbauer*, No. 94-2128, 1995 WestLaw 236677, at * 2 (6th Cir. (Mich.)); *Wilcox v. Littlefield*, No. 94-3625, 1995 WestLaw 98822, at * 2 (6th Cir. (Ohio)); *Cheatham v. Hosey*, No. 93-1319, 1993 WestLaw 478854, at * 2 (6th Cir. (Mich)); *Johnson v. Abramajtys*, No. 91-1465, 1991 WestLaw 270819, at * 10 (6th Cir. (Mich.)).

[8] The petitioner's brief on appeal also shows that the petitioner raised this issue on direct appeal solely in the context of state law, (Add. 2, Doc. 1, pp. 16-17), and that the Court of Criminal Appeals addressed the issue in the same context (Add. 2, Doc. 3, pp. 4-5). In other words, the petitioner did not exhaust this claim in the state courts before raising it in this action.
   This claim is subject to Tennessee's post-conviction statute, Tenn. Code Ann. § 40-30-102. The record shows that more than one year has passed since the petitioner's case became final on direct review, that he already has filed one petition for post-conviction relief, that he may not file another, and that this claim does not satisfy the limited circumstances under which he would be permitted to reopen post-conviction. For these reasons, the petitioner's claim is procedurally defaulted under state law. Because the petitioner has not established "cause" and "prejudice," nor does the claim go to the question of "actual innocence," this claim also is procedurally defaulted for purposes of federal *habeas corpus* review. *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977); *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000).

11

did not hire a private investigator; and 3) defense counsel did not hire a ballistics expert to assist in the trial. (Docket Entry No. 1, ¶ 12, Ground Three, pp. 9-10) The respondent argues that the state courts' determination of this issue was neither contrary to, nor an unreasonable application of, clearly established federal law. (Docket Entry No. 15, pp. 11-14)

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a claim of constitutionally ineffective assistance of counsel comprises two elements: 1) the attorney's performance was deficient, falling below an objective standard of reasonableness; and 2) the attorney's deficient performance prejudiced the defendant. *Id*. at 687. In determining whether an attorney performed in an objectively unreasonable manner, courts employ "highly deferential" scrutiny. *Id*. at 689. To satisfy the prejudice requirement, an ineffective assistance claimant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The petitioner's post-conviction evidentiary hearing was held on March 17 and 26, 2006. (Add. 3, Vol. 2) The petitioner and defense counsel, Michael Colavecchio, provided the only testimony. (Add. 3, Vol. 2) Although the petitioner had the burden of proof on post-conviction, the evidence adduced at the evidentiary hearing consisted solely of the petitioner's unsubstantiated allegations against defense counsel. (Add. 3, Vol. 2, pp. 6-32)

The post-conviction court addressed at length the evidence adduced at the evidentiary hearing on this issue and did so in accordance with the *Strickland* standard. (Add. 3, Vol. 1, pp. 0043-0056) In its well reasoned Order, the post-conviction court credited defense counsel's testimony over the petitioner's in determining that each of the petitioner's allegations was without

merit.

The petitioner raised this claim on appeal from the judgment of the post-conviction court. (Add. 4, Doc. 1) Citing *Strickland* as controlling when ineffective assistance of counsel is alleged, the Court of Criminal Appeals addressed each of the factual predicates and determined that each factual predicate was without merit. (Add. 4, Doc. 3, pp. 8-11) A plain reading of the Court of Criminal Appeals' opinion shows that the Court considered the post-conviction court's findings of fact and conclusions of law, both of which were clearly supported by the record.

The determination of the Court of Criminal Appeals on this issue was neither contrary to, nor an improper application of, clearly established federal law. Moreover, the factual determinations of the Court of Criminal Appeals were clearly supported by the record and, as such, entitled to the presumption of correctness. This claim is without merit.

### Certificate of Appealability

The petitioner has not made a substantial showing of a denial of a constitutional right. Accordingly, for the reasons explained *supra* at p. 10, a COA will not issue as to this claim.

### D. Whether the Trial Court Erred Because of the Order in Which the Jury Instructions Were Presented

The petitioner alleges that the trial court erred because the order in which the instructions were presented to the jury was different from the order in which they appeared in the indictment. (Docket Entry No. 1, ¶ 12, Ground Four, pp. 11-12) The petitioner concedes that this is a new issue but asks the court to consider it anyway. (Docket Entry No. 1, ¶ 13, p. 12) The respondent argues that, not only is this claim not cognizable in federal *habeas corpus*, it is procedurally defaulted for purposes of federal habeas corpus review. (Docket Entry No. 15, p. 14)

13

Once again, this issue pertains to the application of state law – not federal law. For reasons previously explained, *supra* at pp. 10-11, federal *habeas corpus* relief does not lie for errors of state law. For the reasons previously explained, *supra* at p. 11 n. 8, this claim also is procedurally defaulted for purposes of federal *habeas corpus* review. Accordingly, the respondent is entitled to judgment as a matter of law on this issue.

## Certificate of Appealability

The petitioner has not made a substantial showing of a denial of a constitutional right. Accordingly, for the reasons explained *supra* at p. 10, a COA will not issue as to this claim.

## V. CONCLUSION

For the reasons explained herein, the petition will be denied, and this action dismissed. Moreover, a COA will not issue as to any of the petitioner's claims.

An appropriate Order will be entered.

　　　　　　　　　　　　　　　　　　　　
Aleta A. Trauger
United States District Judge

14